IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:20-CR-57 |
| v. | ) |
| | ) The Honorable Rossie D. Alston, Jr. |
| JASON E. HOLMES, | ) |
| | ) Sentencing: October 27, 2020 |
| *Defendant.* | ) |
| | ) |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

For years, the defendant sought out, paid for, and downloaded images and videos depicting child sexual abuse using the internet. He did so through multiple methods, including peer-to-peer software, a "dark web" online network known as The Onion Router ("Tor"), and secretive password-protected websites on the open internet.[1] And he did so on a massive scale. A forensic examination of thirteen devices seized from the defendant's home pursuant to a warrant uncovered tens of thousands of images and videos depicting the sexual abuse of children, including prepubescent and toddler-aged children, as well as online communications about child pornography the defendant had with other offenders. What is more, when the defendant's home was searched, law enforcement found enlarged, printed-out pornographic images of certain minors that the defendant admitted to posting on foam-board cutouts and positioning around his home.

On February 27, 2020, a federal grand jury sitting in the Eastern District of Virginia returned an indictment charging the defendant with receipt and possession of child pornography,

[1] "The Onion Router ('Tor') is an encrypted online network, one of several networks that make up the dark web. Tor uses a series of relay computers to mask the identity of online users. As a result, Tor obscures how, when, and where users access the internet. With such powerful anonymity protections, some use Tor for drug dealing, child pornography, and other nefarious purposes." *United States v. McLamb*, 880 F.3d 685, 688 (4th Cir. 2018).

in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1) and 2252(a)(4)(B) & (b)(2), respectively. On August 12, 2020, the defendant pleaded guilty to the receipt-of-child-pornography count. The applicable Guidelines range for this offense has been correctly calculated in the Presentence Investigation Report ("PSR") as 97 to 121 months of imprisonment. For the reasons that follow, the United States respectfully submits that a Guidelines-compliant sentence is appropriate here. The United States also respectfully requests that the Court impose a substantial term of supervised release and a $5,000 under 18 U.S.C. § 3014 and set a hearing approximately ninety days from the date of sentencing to address the restitution the defendant owes his victims.

## BACKGROUND

On August 12, 2020, the defendant pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1).[2] He also stipulated to the information contained in the statement of facts, *see* Dkt. No. 50, which is summarized below.

In 2017, the Department of Homeland Security, Homeland Security Investigations ("HSI") determined that the defendant was purchasing child pornography from a password-protected website. Dkt. No. 65 ("PSR") at ¶ 22. Based on this information, HSI obtained and executed a federal warrant to search the defendant's residence in Leesburg, Virginia, where he lived alone. *Id.* at ¶ 23. During the search, the defendant agreed to speak to law enforcement and admitted to purchasing and downloading child pornography using the internet. *Id.* Additionally, law enforcement uncovered approximately two dozen sheets of paper that could be assembled to depict enlarged images of child pornography. *Id.* at ¶ 26. The defendant told law enforcement that he

[2] The term "child pornography" will be used to refer to a visual depiction of a minor engaged in sexually explicit conduct, as those terms are defined in 18 U.S.C. § 2256.

printed out images of certain prepubescent children depicted in child pornography files, mounted the images to stand-up cutouts, and placed the cutouts around his home. *Id.*

Law enforcement seized about two dozen electronic devices from the defendant's home pursuant to the warrant. *Id.* at ¶ 26. A forensic examination of thirteen of these devices—including multiple computers, hard drives, a flash drive, an Apple iPhone, and an Apple iPad—uncovered tens of thousands of images and videos depicting the sexual abuse of children. PSR at ¶ 27. Specifically, the examination showed that the defendant intentionally searched for and downloaded child pornography over the internet from at least October 2016 to April 2018 using password-protected sites on the open internet, peer-to-peer software, and Tor.[3] *Id.* at ¶ 28. The files found on these devices include images depicting an adult male sexually abusing an approximately two-year-old child and a video depicting an adult male engaged in vaginal sex with a prepubescent girl. *Id.* at ¶ 29. Law enforcement also uncovered online communications the defendant had with others about obtaining access to child pornography.[4] *Id.* at ¶ 28.

After law enforcement completed its forensic examination of the defendant's electronic devices, the United States applied for and obtained a criminal complaint and arrest warrant charging the defendant with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Dkt. Nos. 1, 2. Following his arrest, the defendant was released from custody on

---

[3] The government's forensic examination report, which was provided to the defendant in the course of discovery, notes that at least 34,732 images and 4,573 videos depicting child sexual abuse with creation dates ranging from 2004 to 2018 were recovered from nine of these devices. Not included in this tally are the images and videos recovered from two Apple Mac Mini computer devices, which the defendant's own computer examiner found to contain large quantities of additional child pornography files.

[4] The government's forensic report also notes that emails recovered from the defendant's computer show an individual using a "j.holmes" email account communicated with another individual about, among other things, paying for access to a child pornography website on Tor using Bitcoin.

December 4, 2019, with several special conditions of release. PSR at ¶ 17. On August 12, 2020, the Court accepted the defendant's plea of guilty to one count of receipt of child pornography and remanded him to the custody of the U.S. Marshals. *Id.* at ¶ 3. He has remained in custody since that time. *Id.*

## SENTENCING ANALYSIS

To determine the appropriate sentence, a court must consult both the United States Sentencing Guidelines ("Guidelines") and the factors in 18 U.S.C. § 3553(a). Based on an assessment of these factors, the United States respectfully submits that a sentence within the Guidelines range of 97 to 121 months is appropriate here.

## I. Guidelines Calculation

Although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the PSR correctly calculated the defendant's total offense level under the Guidelines as follows:

| **Guideline** | |
|---|---|
| Base offense level (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| The offense was limited to the receipt or solicitation of material involving the sexual exploitation of a minor and the defendant did not intend to distribute such material (U.S.S.G. § 2G2.2(b)(1)) | -2 |
| The material involved a prepubescent minor or a minor who was younger than twelve years old (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| The offense involved material that portrays sadistic or masochistic conduct or other depictions of violence or sexual abuse or exploitation of an infant or toddler (U.S.S.G. § 2G2.2(b)(4)) | +4 |
| The offense involved the use of a computer for the receipt of the child pornography (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| Offense involved 600 or more images (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |

| | |
|---|---|
| Acceptance of responsibility (U.S.S.G. § 3E1.1)[5] | -3 |
| **TOTAL OFFENSE LEVEL** | **30** |

PSR at ¶¶ 43–56. Given that the defendant falls in Criminal History Category I, his resulting Guidelines sentencing range is 97 to 121 months of incarceration. *Id.* at ¶ 86.

The defendant has objected to the PSR's application of the four-point enhancement under U.S.S.G. § 2G2.2(b)(4), arguing that: (1) this provision of the Guidelines does not define "sexual abuse," "exploitation," "infant," or "toddler"; (2) "sexual abuse and exploitation are unconstitutionally overbroad here, facially and as applied"; and (3) the evidence does not establish such conduct. Dkt. No. 57 at 1–2. The defendant's arguments are unavailing.

Section 2G2.2(b)(4) is a two-pronged provision that applies where the offense involves material that portrays "sadistic" conduct *or* material depicting the sexual abuse of an infant or toddler. The statement of facts here identifies one of the files of child pornography recovered from the defendant's devices as an almost nine-minute video of an adult male having vaginal intercourse with a prepubescent girl and others as images depicting an adult male pressing his erect penis against the anus and into the mouth of an approximately two-year-old child—conduct that is undeniably sexually explicit. Dkt. No. 50 at ¶ 5. Further, it is well recognized that, "[w]here pornography images portray the sexual penetration of prepubescent children, courts consistently find the images 'inherently sadistic' because they depict sexual acts that are 'likely to cause pain in one so young.'" *United States v. Johnson*, 680 F. App'x 194, 198 (4th Cir. 2017) (citing cases from the Fourth, Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits); *see also United States v. Lyckman*, 235 F.3d 234, 239 n.22 (5th Cir. 2000) ("One hardly requires a medical degree to

[5] Because the defendant timely entered a plea of guilty and because his offense level is greater than sixteen, the government moves for a one-level decrease in his offense level pursuant to U.S.S.G. § 3E1.1(b) and the plea agreement. Dkt. 49 at 4.

ascertain that vaginal intercourse with an adult male would involve pain, both physical and emotional, for a young girl.”). There can therefore be no dispute that the files described in the statement of facts depict minors engaged in sexually explicit conduct, and, according to the relevant caselaw, the penetrative sexual acts depicted in these files fit within the plain meaning of sadistic conduct. Accordingly, the PSR correctly applies the four-level enhancement under § 2G2.2(b)(4)(A) and the Court need not address the defendant’s remaining arguments. *See United States v. Lee*, 321 F. App’x 298, 301 (4th Cir. 2009) (declining to address constitutional challenge to § 2G2.2(b)(4) where image depicts a minor and is both sexually explicit and portrays sadistic conduct).

## II. Section 2252(a)(2) and (b)(1)’s Mandatory Minimum Sentence

When a defendant is found guilty of receipt of child pornography, the statute instructs that he must be imprisoned for not less than five years and not more than twenty years. 18 U.S.C. § 2252(b)(1). In his sentencing memorandum, the defendant argues that the mandatory-minimum sentence required by § 2252(b)(1) is advisory because § 3553, which covers the factors to be considered at sentencing, does not give “superseding weight to any so-called mandatory sentence contained in particular penalty provisions” and instead “simply requires the Court to ‘consider’ that provision in terms of what is available.” Dkt. No. 60 at 2–3. That is not correct. Section 3551(a) states that “*[e]xcept as otherwise specifically provided*, a defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2)[.]” (emphasis added). And as the Fourth Circuit has explained, the “otherwise specifically provided” language of § 3551(a) covers mandatory minimum sentences such that that “no conflict exists between § 3553(a) and statutorily-mandated sentences.” *United*

*States v. Holton*, 469 F. App'x 265, 267 (4th Cir. 2012); *see also United States v. Sutton*, 625 F.3d 526, 529 (8th Cir. 2010) ("Congress has 'otherwise specifically provided' in 21 U.S.C. § 841(b)(1)(A) that the sentence for Sutton's offense must fall between 120 months' and life imprisonment. The factors set forth in § 3553(a) must be considered only for the purpose of deciding where the court should sentence within the statutory range.").[6] In other words, the defendant's arguments to the contrary are meritless.

## III. Section 3553(a) Factors

After calculating the Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to § 3553(a)'s enumerated factors, of particular relevance here are the "nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense" and provide "just punishment," the need "to promote respect for the law," and the need for the sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (a)(2). As explained below, based on these factors, a Guidelines-compliant sentence of at least 97 months is appropriate here.

### A. A Guidelines-compliant sentence is warranted based on the nature, circumstances, and seriousness of the defendant's offense

It is beyond dispute that child pornography crimes are grievous offenses that warrant significant sanctions. *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child

[6] Sections 3553(e) and (f) also note that a court can only impose a sentence below a statutory minimum when: (1) the government makes a motion for a downward departure based on substantial assistance; and (2) the defendant meets the so-called "safety valve" requirements under the Controlled Substances Act. Neither of those scenarios apply here.

pornography be treated severely" (internal quotations and citation omitted)). Such crimes inherently involve the sexual abuse of children, even if no new child pornography is produced. *See New York v. Ferber*, 458 U.S. 747, 759 (1982). Indeed, far from being victimless, trafficking in child pornography "harms children in part because it drives production [of child pornography], which involves child abuse." *Paroline v. United States*, 572 U.S. 434, 439 (2014). Trafficking in child pornography also results in perpetual harm to the children who have already been sexually abused, all of whom are grappling with the indelible trauma caused by that abuse. *See id.* at 440. As the Fourth Circuit observed, "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *Ferber*, 458 U.S. at 759). Put differently, these young victims live every day knowing that this cycle of re-victimization will never end, that they will never recover the images of their abuse, and that they will never know the full scope of who has seen and derived sexual pleasure from these images.

The defendant's conduct here is no exception. He was a prolific consumer of child pornography, amassing a collection of thousands and thousands of files across over a dozen devices depicting the sexual abuse of children. And while the defendant now claims that he obtained many of these files from "high bulk" downloads, Dkt. No. 60 at 4, the fact that tens of thousands of child pornography files with creation dates spanning over a decade were recovered from thirteen different devices in his home makes clear that his conduct was not limited to a handful of isolated downloads on his computer. The statement of facts submitted in this case further makes clear he was a sophisticated consumer of child pornography. He obtained child

pornography from multiple sources, including Tor, which is an encrypted network designed to provide users with anonymity while on the internet.

The defendant was also communicating with others about child pornography, which indicates that he had managed to immerse himself in an online community of child sex offenders. In December 2012, the Sentencing Commission issued a report on child pornography offenses that addresses this issue of online communities of child pornographers. *See* United States Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses* (Dec. 2012) ("U.S.S.C. Report").[7] The Commission delineated three general categories of child pornography distribution that occur in light of the proliferation of internet-accessible technology: impersonal distribution, which typically occurs on peer-to-peer networks without any direct communication; personal distribution, which occurs on certain closed networks where users can chat with each other and seek out particular content; and online child-pornography communities. *See, e.g.*, *United States v. Klear*, 3 F. Supp. 3d 1298, 1304 (M.D. Ala. 2014) (citing U.S.S.C. Report at 52, 53, and 92–99). The emergence of this final category is particularly concerning because offenders in these communities normalize, validate, and encourage their sexual interest in children "so that actual sexual contact with a child no longer seems as wrong" and more offenders feel emboldened to take the steps from possession to production of child pornography. *Id.* And it appears the defendant had already begun that process, enlarging images of child pornography that appealed to him and posting them around his home to view them in a personalized setting outside the context of his computer screen.

[7] The U.S.S.C. Report is available online at https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses.

Equally important in the determination of an appropriate sentence is the harm the defendant's conduct caused his victims. As one victim depicted in the child pornography that he downloaded explained: "My abuser stole my childhood and each of these defendants, who possess and distribute pictures of my abuse, steal my life." Dkt. No. 65–2 at 2. Another victim of the defendant's conduct similarly wrote: "My childhood innocence was stolen and continues to be exploited on a daily basis by strangers. Knowing that I cannot retrieve the photos or videos, nor can I remove them from the internet and dark web makes me feel helpless and powerless." *Id.* at 18. And yet another victim wrote that she "live[s] everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of [her] life and taking grotesque pleasure in them." Dkt. 65–3 at 47. For this victim, the knowledge that individuals like the defendant "are trading around [images of her] trauma like treats at a party" makes her feel like she is "being raped all over again by every one of them" and "sickens [her] to the core[.]" *Id.*

Put simply, for the victims of the defendant's, the trauma and pain associated with the knowledge that offenders like him are constantly trafficking in images and videos depicting their sexual abuse has devastating consequences. And while the defendant now admits to his conduct and accepts responsibility for his actions, the irreparable harm he has caused to the victims of his offense nevertheless warrants a substantial term of incarceration.

**B. A sentence of at least 97 months is necessary to promote respect for the law and to afford adequate deterrence**

A Guidelines-compliant sentence is also necessary here in order to deter the defendant from engaging in this conduct in the future. As the forensic evidence demonstrates, the defendant had been downloading large quantities of child pornography for several years. Put simply, this was not an isolated incident, but rather part of a broader pattern on his part of searching for and trafficking in images and videos of child sexual abuse. The defendant's use of Tor to find and

download child pornography also indicates that he was intentionally taking steps to hide his conduct so that he could continue engaging in it for longer without detection. A substantial sentence is therefore warranted to deter the defendant from reengaging in this sort of criminal behavior upon his release from incarceration.

More generally, a Guidelines-compliant sentence is appropriate here to deter other child sex offenders. Many offenders, like the defendant, believe that they enjoy anonymity when they engage in this sort of conduct over the internet, particularly on Tor. Accordingly, the government respectfully requests that the Court impose a sentence that both deters the defendant from continuing this pattern of conduct upon his release and sends a message to other offenders that their participation in a marketplace that thrives on the sexual abuse of children will not be tolerated.

## IV. Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release here is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) ("[S]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes [and that] . . . the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and the Fourth Circuit has observed that § 3583(k) and 5D1.2(b) jointly "reflect[] the judgment of Congress and the

Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citations omitted). For the reasons above, the United States respectfully recommends that the Court impose a substantial term of supervised release of at least ten years with the conditions of supervision contemplated under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3(d)(7) for sex offenders.

**V. Mandatory Special Assessment Under the Justice for Victims of Trafficking Act**

The Justice for Victims of Trafficking Act imposes a mandatory assessment of $5,000 on any non-indigent defendant convicted of, among other offenses, receipt of child pornography. 18 U.S.C. § 3014(a)(3).[8] While the statute is silent as to how to determine indigence, courts have treated the imposition of this assessment like the imposition of other post-conviction assessments, meaning "[t]he defendant bears the burden of proving both his inability to pay at the time of sentencing and that he is not likely to become able to pay a fine upon his release from his term of imprisonment." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) (internal citations and quotation marks omitted). Relevant factors to consider in this determination include a defendant's future earning potential, assets, educational background, employment history, age, and physical condition. *See United States v. McMiller*, 954 F.3d 670, 675 (4th Cir. 2020) ("[W]e agree with our sister circuits that a district court may consider a defendant's future earning potential when determining his ability to pay an assessment under 18 U.S.C. § 3014(a)." (citations omitted)); *see*

[8] The money obtained from this assessment goes to the Domestic Trafficking Victims' Fund, which is used to award grants and enhance programming for victims of human trafficking and child pornography, and is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See* 18 U.S.C. § 3014(b) & (e).

*also United States v. Mann*, 770 F. App'x 649, 650 (4th Cir. 2019); *United States v. Graves*, 908 F.3d 137, 143 (5th Cir. 2018).

Here, the defendant is an educated and physically-capable adult with the ability and skillset to work following his term of incarceration. Indeed, prior to his arrest, he was consistently employed and owned his own residence. PSR at ¶¶ 77–79,82. More recently, he retained an attorney to represent him in this case. Taken together, these facts indicate that the defendant will be able to pay a $5,000 special assessment upon his release from imprisonment, if not at the time of sentencing. Accordingly, the United States respectfully requests that the Court find the defendant not indigent and impose a mandatory $5,000 special assessment under 18 U.S.C. § 3014.

## VI. Restitution

The government has received restitution requests from approximately twenty-four victims. PSR ¶ 36. The government believes that the parties will be able to reach an agreement with the victims' representatives on the amount of restitution to be ordered in this case, but does not anticipate being able to do so by the time of sentencing. Accordingly, the United States respectfully requests that the Court not render a judgement of restitution at sentencing, retain jurisdiction over the matter, and set a hearing for approximately ninety days after sentencing to address the issue, consistent with the parties' agreement with respect to restitution in the plea agreement. Dkt. No. 49 at 6.

## CONCLUSION

For the reasons above, the United States respectfully requests that the Court impose a Guidelines-compliant sentence, at least ten years of supervised release, and a $5,000 special assessment under 18 U.S.C. § 3014.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/____________________________________

William G. Clayman
Special Assistant United States Attorneys (LT)
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: william.g.clayman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/

William G. Clayman
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: william.g.clayman@usdoj.gov